IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JIM B. ESTES, PRO SE, | § | |
| also known as CATFISH JIM ESTES, | § | |
| also known as JIM ESTES, | § | |
| also known as J. B. ESTES, | § | |
| also known as JAMES BYERS ESTES, JR., | § | |
| TDCJ-CID No. 1003415, | § | |
| Previous TDCJ-CID No. 450903, | § | |
| Previous TDCJ-CID No. 816608, | § | |
| Previous TDCJ-CID No. 292511, | § | |
| NVID No. 29107, | § | |
| LVFCI No. 29108-048, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:11-CV-0023 |
| | § | |
| JAVET RAHORST ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On this day came for consideration defendants' September 27, 2012 Motion for Summary Judgment with supporting brief and exhibits. Plaintiff filed responses entitled "Objections" and "Objection and Response to Defendants Brief in Support of Motion for Summary Judgment" on October 24, 2012. Defendants filed their Objections and Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment on November 2, 2012. Plaintiff then filed a motion for leave to file supplementary response on April 9, 2013, to which defendants objected on April 24, 2013. The Court denied the motion for leave on May 15, 2013.

Plaintiff also filed a May 15, 2013 pleading entitled "Plaintiff's Revised Objections Pursuant to F.R.C.P. 54(b)(c) to the Order Dismissing his Claims as to Concerning [sic] the

Discontinuation of Pain Medications and Remedy Deficiency Pursuant to L.R. 10.1." By this pleading, plaintiff appears to be trying to resurrect previously dismissed claims regarding the discontinuation of certain medications, *i.e.*, Robaxin and Tramadol.

Presently, plaintiff's remaining claims are that defendants Dr. LEEAH and KELLY[1] WALLACE, Facility Health Administrator, as controlling policymakers, displayed deliberate indifference to plaintiff's serious medical needs when they approved of or authorized the confiscation of his T.E.N.S.[2] unit for a non-medical reason.

Plaintiff requests the return of his T.E.N.S. unit, and pain medication, as well as compensatory, punitive and nominal damages. Plaintiff's claims relating to discontinuation of Tramadol and Robaxin have previously been dismissed. To the extent any causes of action concerning medication remain, they are addressed.

## UNDISPUTED FACTS

Plaintiff was a prisoner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), during the time relevant to this cause. Similarly, at all times relevant to this cause, defendants LEEAH and WALLACE were employed by the Texas Tech University Health Sciences Center, a state agency, and acted under color of state law. In 2008 plaintiff was prescribed a T.E.N.S. unit for treatment of back pain. After at least two temporary confiscations of the T.E.N.S. unit for suspected misuse, plaintiff was given the T.E.N.S. unit again, but only after being required to sign a notice acknowledging that any further misuse would result in the permanent confiscation of the unit.

---

[1]Defendant WALLACE's Affidavit shows she actually spells her first name "Kelle;" however, in the absence of any Suggestion of Proper Spelling of Name from the defendant, the Court will continue to utilize the spelling "KELLY" in conformity with the docket.

[2]"T.E.N.S." is an abbreviation for "transcutaneous electrical nerve stimulation." Dorland's Illustrated Medical Dictionary 1905 (31st ed.2007).

According to defendants, plaintiff needed batteries more often than medical personnel thought necessary.  Eventually, plaintiff was found in possession of tattoo paraphernalia, including a tattoo gun.  A notice was sent to the medical department that the tattoo gun was battery-powered and plaintiff was suspected of having used batteries from the T.E.N.S. unit to power the tattoo gun.  Plaintiff denied the tattoo gun was battery powered, but was given a disciplinary case for possession of a tattoo gun and tattoo paraphernalia.  Plaintiff was found guilty in the disciplinary proceeding.  Plaintiff's T.E.N.S. unit was confiscated on or around November 16, 2010.

## FACTUAL ALLEGATIONS

On October 20, 2011, a hearing was conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff stated he had a laminectomy of his spine at L4-L5 in February of 2003 by a Dr. Maxwell and, after surgery, Dr. Maxwell prescribed a T.E.N.S. unit, a device about the size of a walkman radio, which runs on a 9 volt battery and which, he said, relieved his back pain.  Plaintiff was also prescribed Robaxin and Tramadol.

On November 16, 2010[3] the T.E.N.S. unit was confiscated for security reasons.  At the *Spears* hearing, plaintiff contended that, for purposes of punishing him for having a tattoo gun, defendant JONES had made a statement that plaintiff had used the batteries to run the tattoo gun.  Plaintiff then admitted his allegation concerning JONES was simply speculation and he had no facts to support that speculation.  Defendant JONES was subsequently dismissed.

Thereafter, plaintiff testified, he was given limited use of the T.E.N.S. unit for four 15 minute periods per day.  Plaintiff was then transferred from the Neal Unit to the Clements Unit

---

[3]Initially, plaintiff also sued over two temporary confiscations of his T.E.N.S. unit by defendant RAHORST which occurred on or about January 2009 and March 31, 2009.  Those confiscations have been examined in an earlier Report and Recommendation and plaintiff's claims in connection with those confiscations have been dismissed.

and has had no access to the T.E.N.S. unit at all since his transfer.  Plaintiff testified he was in pain every day.

By his November 8, 2011 Amended Complaint, plaintiff claimed defendants WALLACE and LEEAH were both policy makers and approved of or authorized the confiscation of his T.E.N.S. unit "leaving [plaintiff] without anything for pain relief[4]."

Plaintiff requests the return of his T.E.N.S. unit and pain medications, along with compensatory, punitive, and nominal damages.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By their motion, defendants have submitted the following summary judgment evidence:

| | |
|---|---|
| Exhibit A | Affidavit of Mark S. Maxwell, D.O., with curriculum vitae (App. 1-8); |
| Exhibit B | Affidavit of Benjamin Leeah, M.D. with curriculum vitae and list of medicines prescribed to treat plaintiff's pain during the relevant time period (App. 9-22); |
| Exhibit C | Selected pages of plaintiff's medical records from TDCJ Health Services Archives or printed from TTUHSC's EMR (App. 23-107); and |
| Exhibit D | Affidavit of Kelle Wallace (App. 108-110[5]). |

Defendants argue plaintiff's Eighth Amendment Medical Claims are without merit in that the T.E.N.S. unit was not "medically necessary," that plaintiff has been treated for his pain subsequent to the confiscation of the T.E.N.S. unit, that plaintiff has received continuous care, and defendant WALLACE had no personal involvement in plaintiff's medical care, including the confiscation of his T.E.N.S. unit.  Defendants contend plaintiff is unable to establish

---

[4]Plaintiff also attempted to resurrect various claims he had earlier asserted against a multitude of defendants, which claims had already been analyzed and dismissed.  Plaintiff alleged nothing sufficient to require any additional review of those claims, including his claim that his pain medications, Robaxin and Tramadol had been discontinued and that he was receiving no treatment for his pain.

[5]Defendants inform the Court these numbers are the handwritten numbers located in the lower right at the bottom of the pages.

causation for his section 1983 medical claims and that they are entitled to qualified immunity against such claims.  Defendants further argue plaintiff's official-capacity damages claims are barred and his claims for injunctive relief are without merit.

Defendants further argue plaintiff's medical malpractice claims are barred due to the absence of an expert report, the facts before the Court do not support a medical malpractice claim under Texas law, plaintiff has not established causation on such claims, and they are entitled to the defense of official immunity.

By his October 24, 2012 Objection to Defendants Motion for Summary Judgment, plaintiff argues "defendants have not expressly presented in the Summary Judgment motion the grounds alleged" and contends the Court cannot consider grounds raised in a brief but not in the summary judgment motion.

By his October 24, 2012 Objection and Response to Defendants Brief in Support of Motion for Summary Judgment, plaintiff presents various allegations and arguments in support of his section 1983 claims.

Plaintiff also states he has not filed a state tort or medical malpractice suit[6] and says his claims do not fall under the MLIIA[7].  Plaintiff goes on to say he has not claimed medical malpractice but has claimed "deliberate indifference to his serious injuries, gross negligence/inadiquate [sic] medical treatment by the defendants."  In light of plaintiff's unequivocal statement that he has not asserted and is not asserting a claim under Texas tort law, the Court construes this statement to mean plaintiff is claiming gross negligence and

---

[6]Plaintiff's October 24, 2012 Objection and Response to Defendants Brief in Support of Motion for Summary Judgment at page 18, section G.

[7]The Texas Medical Liability and Insurance Improvement Act (MLIIA), Tex. Rev. Civ. Stat. Ann. art. 4590i, recodified at Tex. Civ. Prac. & Rem. Code Ann. § 74.001 et seq. (Vernon 2005).

inadequate medical treatment under federal law.  Plaintiff says he has alleged an Equal

Protection claim under the Texas Constitution "because defendants have abused plaintiff's

protected State Constitutional rights thereby."

Plaintiff further argues he can show causation and defendants are not entitled to

qualified immunity.

### THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law.  Federal Rule of Civil Procedure 56(c).  Consequently, after adequate time for

discovery and upon motion, summary judgment should be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case

and on which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Only disputes of facts that could affect the outcome of the suit at trial will properly

preclude the entry of summary judgment.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106

S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A complete failure of proof concerning an essential

element of the nonmoving party's case is fatal and entitles the moving party to judgment as a

matter of law.  *Celotex v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552.  A motion for

judgment as a matter of law is properly granted when the facts and inferences point so strongly

in favor of the movant that a rational jury could not arrive at a contrary verdict.  If there is

substantial evidence, that is, evidence of such quality and weight that reasonable and fair-

minded jurors might reach a different conclusion, then the motion for judgment as a matter of

law should be denied.  *Waymire v. Harris County, Texas*, 86 F.3d 424, 427 (5th Cir. 1996).

## THE STANDARD OF SUMMARY JUDGMENT REVIEW
## UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly

established constitutional right, a preliminary inquiry must be made whether the plaintiff has

asserted a violation of any constitutional right at all.  *Siegert v. Gilley*, 500 U.S. 226, 231, 111

S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  Analysis at this stage is performed under the

"currently applicable constitutional standards."  *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th

Cir. 1993).  The second prong of the qualified immunity test is whether the constitutional right

alleged to have been violated was clearly established at the time of the incident; and, if so,

whether the conduct of the defendant was objectively unreasonable in  light of

contemporaneous clearly-established law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).

Although analysis under the first prong requires the court to consider currently applicable

constitutional standards, analysis under the second prong requires a court to measure the

objective reasonableness of an official's conduct with reference to the law as it existed at the

time of the conduct in question.  *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir.

1993).

In deciding which of the two prongs to address first, the court may utilize its sound

discretion in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, 555

U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Although it may be "difficult to imagine factual circumstances in which a trier of fact

could find deliberate indifference as defined by *Farmer*[8] and nevertheless conclude that a reasonable person in defendant's position was not chargeable with knowledge that his or her actions violated the plaintiff's clearly established constitutional rights," in analyzing a claim of qualified immunity, the test is objective reasonableness, not subjective deliberate indifference. *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998)(quoting *Briecke v. Coughlin*, No. 92-CV-1211, 1994 WL 705328 at 6 (N.D.N.Y.Dec. 16, 1994).  Consequently, at the qualified immunity stage, the deliberate indifference standard only allows an examination of whether, under the standard not to be deliberately indifferent, the acts or omissions of the defendant were objectively unreasonable as a matter of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

## ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Denial of proper medical care to an inmate for non-medical reasons, such as punishment, could constitute deliberate indifference.  This case survived the initial screening process and proceeded to answer in large part because of plaintiff's initial allegations that he had been denied medical treatment, *i.e.*, use of the T.E.N.S. unit, for non-medical reasons.  Specifically, that he had been denied medical care as a form of punishment because of his possession of a tattoo gun.

**Defendant WALLACE**

A supervisory official may be held liable only when he is either personally involved in the acts causing the deprivation of a person's constitutional rights, or there is a sufficient causal connection between the official's act and the constitutional violation sought to be redressed.

---

[8]Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

*Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981) (*per curiam*).  The acts of subordinates trigger no individual section 1983 liability for supervisory officers.  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314(5th Cir. 1999).

Plaintiff has alleged defendant WALLACE, as a supervisory official, determined policy with respect to the use and/or confiscation of devices such as the T.E.N.S. unit and that defendant WALLACE was personally involved in the confiscation of his T.E.N.S. unit.

Defendant WALLACE presented her sworn affidavit (Defendants' Exhibit D pp.109-110) stating she is employed by Texas Tech University Health Sciences Center (TTUHSC) – Correctional Managed Healthcare as Facility Health Administrator for the Neal Unit.  As such, she is not a clinician, does not have a license to practice medicine, and has no medical training.  Her job involves responding to questions about the medical care of the prison inmates.  She collects the information and submits responses to the questions and to inmate grievances.  She supervises a clerical staff and is responsible for the administrative operations of the clinic.

As to the confiscation of plaintiff's T.E.N.S. unit, defendant WALLACE avers she had no involvement in the decision to confiscate; had no discussions with plaintiff's doctor or with defendant Dr. LEEAH about the incident triggering the confiscation; and is prohibited from making decisions concerning medical care for an inmate.  While plaintiff may have assumed WALLACE was personally involved, plaintiff has failed to present any evidence or point to existing evidence in the record which shows defendant WALLACE participated in the decision to confiscate his T.E.N.S. unit or that she committed some other act which caused the confiscation of the T.E.N.S. unit or which caused any violation of plaintiff's constitutional

rights.  Even if, as plaintiff has alleged, defendant WALLACE was present at the time the

T.E.N.S. unit was confiscated and supervised the nurse who made such confiscation, this fact,

if true, does not establish defendant WALLACE had knowledge the confiscation would place

plaintiff in substantial risk of serious harm and then failed to act, ignoring that risk.  Not only

has plaintiff not shown that WALLACE had the authority to authorize confiscation of the unit,

he has not shown WALLACE had the authority to prevent such confiscation.  In addition,

prison officials have no constitutional duty to believe an inmate's claims as to his medical

condition as opposed to the findings of medical professionals.  *See, e.g., Althouse v. Roe*, 542

F.Supp.2d 543 (E.D.Tex. 2008) (citing *Taylor v. McElvaney*, slip op.no. 1:01cv94 (N.D.Tex.,

Aug. 12, 2002)(unpublished) (available at 2002 WL 32138256)(no duty to believe inmate's

allegations over officer's statement and medical record) (citations omitted)).  Defendant

WALLACE, a clinic administrator, was entitled to rely upon the judgment of plaintiff's

treating physicians and other medical professionals.

Consequently, defendant WALLACE has clearly shown she is entitled to summary

judgment on the basis of qualified immunity as well as being entitled to summary judgment on

the merits.

**Defendant DOCTOR LEEAH**

Defendant Dr. LEEAH has stated plaintiff's physician[9] consulted him on whether or not

to permanently confiscate plaintiff's T.E.N.S. unit and that he [LEEAH] approved the decision

to confiscate.

"A prison official violates the Eighth Amendment's prohibition against cruel and

unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's

---

[9]The Court notes that plaintiff has never named the confiscating physician as a defendant.

serious medical needs, constituting an 'unnecessary and wanton infliction of pain.' " *Easter v.*

*Powell*, 467 F.3d 459 (5th Cir. 2006) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct.

2321, 115 L.Ed.2d 271 (1991)).  Deliberate indifference is defined as a failure to act where

prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).  Such

indifference may  be "manifested by prison doctors in their response to the prisoner's needs or

by prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct.

285, 291, 50 L.Ed.2d 251 (1976).

"A prison inmate can demonstrate an Eighth Amendment violation by showing that a

prison official refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for

any serious medical needs."  *Id*. at 464 (quotation omitted).

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Texas*

*Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  Negligent or erroneous medical

treatment or judgment does not provide a basis for a section 1983 claim. *Graves v. Hampton,* 1

F.3d 315, 319 (5th Cir.1993).

The plaintiff is not entitled to the "best" medical treatment available.  *McMahon v.*

*Beard,* 583 F.2d 172, 174 (5th Cir.1978); *Irby v. Cole,* No. 4:03cv141-WHB-JCS, 2006 WL

2827551, at *7 (S.D.Miss. Sept.25, 2006).  "Deliberate indifference exists wholly independent

of an optimal standard of care."  *Gobert v. Caldwell,* 463 F.3d 339, 349 (5th Cir.2006).  As

long as medical personnel exercise professional medical judgment, their behavior will not

violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102

S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982).  A prisoner's, or some other layperson's,

disagreement with prison officials regarding medical treatment is insufficient to establish an

unconstitutional denial of medical care.  *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir.

1997).

By his testimony at the *Spears* hearing, Dr. LEEAH opined that tattooing, in and of

itself, is medically risky, for obvious reasons such as disease transmission, etc.  Secondly,

tattooing is not permitted by prison rules.

Defendant LEEAH, in his motion for summary judgment, does not directly address the

propriety of the decision to discontinue use of the T.E.N.S. unit based upon plaintiff's

misconduct.  Instead, defendant goes directly to whether the unit was medically necessary and

whether the alternative medical care plaintiff received defeats any allegation of deliberate

indifference.  Specifically, defendants argue plaintiff's Eighth Amendment Medical Claims are

without merit because the T.E.N.S. unit was not "medically necessary" and plaintiff has

otherwise been treated for his pain, receiving continuous care.  Defendants point to the sworn

Affidavits of Dr. Maxwell, D.O., who is Board Certified in Neurology and Neurosurgery, and

of defendant Dr. Benjamin LEEAH, M.D., Board Certified in Family Practice.

Although prison medical providers, in treating inmates, are generally permitted to

institute and/or discontinue methods of treatment as they deem best, a discontinuation and/or

withholding of necessary medical treatment as punishment would be improper.  *Estelle v.*

*Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)("[Deliberate]

indifference may  be 'manifested by prison doctors in their response to the prisoner's needs or

by prison guards in intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed.' ").  Discontinuation for misuse or abuse of

medical instruments however, would not be violative of the Eighth Amendment if alternative methods of treatment were implemented.  In this case, the discontinuation of the T.E.N.S. unit was based upon reports that plaintiff had misused the unit.  As set out below, so long as defendants had reason to believe plaintiff misused the unit, they were justified in taking appropriate action.  This is particularly so since the action taken included providing plaintiff with alternative treatment.

Regarding the "medical necessity"of the T.E.N.S. unit, Dr. LEEAH opined that "[a] T.E.N.S. unit may help with some patients, but it is symptomatic treatment only and provides no real intervention to halt the progression of the conditions leading to the back pain and dysfunction[10]."  Doctor Maxwell stated that, in his expert opinion, "a T.E.N.S. unit was clearly not medically necessary for the treatment of Plaintiff's back and neck pain at anytime during the period of November 5, 2010 to the present."  He stated a T.E.N.S. unit is usually effective for only up to three months after surgery and the "use of a T.E.N.S. unit over seven years [after plaintiff's 2003 back surgery] would be of dubious value."

The Court notes "medical necessity" is not a legal term.  To the extent plaintiff blames the absence of treatment with a T.E.N.S. unit for a worsening of his condition, which has been diagnosed as both chronic and progressive, plaintiff has failed to present or point to any credible evidence, medical or otherwise, which establishes that his condition became worse because of the discontinuation of the use of the T.E.N.S. unit, nor has plaintiff rebutted defendants' evidence as is set forth above.  Even so, the Court still must examine whether the failure to treat plaintiff's pain with a T.E.N.S.  unit constituted deliberate indifference to his serious medical needs.

---

[10]Defendants' Exhibit B p.15.

Defendants point to the medical record and state it shows plaintiff has not been denied treatment, but has received continuous care and has received alternative treatments for his pain.

Plaintiff counters that he has complained of pain continuously for the period since the confiscation of the T.E.N.S. unit and that a new specialist he saw most recently at the pain clinic issued another prescription for a T.E.N.S. unit to treat plaintiff's pain.  The Court has not located any specific summary judgment evidence substantiating the substance of the pain specialist's opinion.  Nevertheless, plaintiff's representation will be addressed herein.  Plaintiff argues the new pain specialist also prescribed Robaxin and Tramadol as well as a cane.  Plaintiff alleges that, although prison doctors have allowed him to have a cane, the defendants have denied him a T.E.N.S. unit and the Robaxin and Tramadol, choosing to treat his pain with other medications.  Plaintiff appears to contend the defendants cannot disregard the treatments prescribed by his pain specialist and pick and choose the treatments they will implement.

Plaintiff also objects that he has not given consent to Dr. Maxwell to disclose or discuss any of plaintiff's medical history or records.

Plaintiff's objection to Dr. Maxwell's review and disclosure or discussion of plaintiff's medical history and/or records in his Affidavit is OVERRULED.  Not only has plaintiff placed his medical condition in issue and, therefore, waived the confidentiality of such records to the extent necessary to examine his claims, plaintiff has also objected to defendant's motion that his medical records be sealed.  Plaintiff has affirmatively stated he "does not wish these records or any aspect of this case sealed from the General Public's View."  See plaintiff's October 24, 2012 Objection to Defendants Motion to Seal.  See also, plaintiff's November 14, 2012 "Final Argument of Defendants Objections and Reply to Plaintiff's Response to Defendants Motion to Seal and Summary Judgment" (plaintiff states, "plaintiff does not wish

his medical records or defenses expert testimony regarding plaintiff's medical history, condition, or treatment sealed from Public Scrutiny.  This is his right! [emphasis in the original].").

Additionally, the fact that Dr. Maxwell has not personally examined plaintiff in the recent past does not preclude consideration of his expert testimony.  Doctor Maxwell reviewed plaintiff's medical records for the relevant period and per Federal Rule of Evidence 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."

Review of plaintiff's medical records [Defendants' Exhibit C] reveals plaintiff has been provided continuous and responsive care for his neck and back pain, as well as for other conditions. Plaintiff has been prescribed a variety of different pain medications, both formulary and non-formulary, following the confiscation of his T.E.N.S. unit, including for one period of time, Robaxin and Tramadol[11] (Ultram); and his physicians have tried new medications in response to plaintiff's complaints.  In addition to Robaxin and Tramadol (Ultram), plaintiff's pain was treated with aspirin, Motrin 800 mg., Pamelor, Neurontin, Naprosyn, Naproxen, Gabapentin, and Meloxicam, as well as with steroid injections.  Plaintiff has been evaluated for cryo therapy.  Further, plaintiff has been provided a cane, a back brace, and medical shoes.

Plaintiff does not refute the history of treatment recounted above and contained in his medical records.  Instead, he says it is not sufficiently effective.  A disagreement over appropriate medical treatment, however, constitutes, at most, a claim of medical malpractice appropriately addressed under state law. *Estelle v. Gamble,* 429 U.S. 97, 107-08, 97 S.Ct.

---

[11]These were ultimately discontinued because plaintiff did not meet the minimum compliance requirement.  At the *Spears* hearing, plaintiff himself, testified he was only 80% compliant.

285, 293, 50 L.Ed.2d 251 (1976); *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir.1991).  In

addition, while plaintiff attacks the discontinuation of his prescriptions for Robaxin and

Tramadol, he does not show either of the remaining defendants was responsible for that

decision.

At the October 20, 2011 *Spears* hearing, plaintiff said the Tramadol and Robaxin were

discontinued because plaintiff "would not go out to stand in the cold to get his morning dose at

6:30 or 7:00" because it hurt his back more and defeated the purpose of the medication.

Plaintiff said he was determined to be "noncompliant" because he was only taking these

medications 80% of the time.

Dr. LEEAH gave sworn testimony at the *Spears* hearing that Tramadol is a non-opioid

agonist which was treated in the prison and by most in the free world as a controlled substance

because it had a high frequency of misuse, diversion, and trafficking and trading.  Therefore,

they have strict criteria to evaluate a patient for provision of Tramadol.  As to the Robaxin, it

does not have FDA approval for long-term chronic pain management, and according to Dr.

LEEAH, that would be an off-label use.  Dr. LEEAH stated such raised a red flag with the

pharmacist who referred it to Dr. LEEAH and he consulted with another clinical pharmacist

and reviewed the literature.  He decided the pain management physician had prescribed it

initially for use for a limited period to be replaced by the T.E.N.S. unit.

Plaintiff responded the medications were prescribed for him by a specialist in

neurology and orthopedics who prescribed them because plaintiff was in pain and they helped.

Plaintiff said they had been replaced by Naproxin and a neural blocking drug which are not

adequate.  He said his back had degenerated to the extent that his nerve was being pinched and

he was losing use of his left leg.

Plaintiff's own testimony at the October 20, 2011 *Spears* hearing and the unchallenged testimony of Dr. LEEAH clearly demonstrate this action was taken for medical considerations and that plaintiff has been given substitute medications, even though he doesn't feel they are as effective as the medications which were discontinued.  While the new medications differ from those prescribed by his previous physician, this alone does not raise an issue of deliberate indifference.  *See Williams v. Smith*, 2009 WL 2431948, *9 (S.D.N.Y.2009) ("a prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."  Plaintiff has failed to allege facts to support a claim of deliberate indifference against anyone regarding the change in prescription medication.

Plaintiff argues the T.E.N.S. unit was prescribed by a pain specialist and Dr. LEEAH was not qualified to disagree with the pain specialist and, therefore, was deliberately indifferent to plaintiff's serious medical need.  Plaintiff is mistaken.  "[A] prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."  *Williams v. Smith*, 2009 WL 2431948, *9 (S.D.N.Y.2009).  The Third Circuit has held that "no [Eighth Amendment] claim is stated when a doctor disagrees with the professional judgment of another doctor."  *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990)(emphasis removed); *see also DeFranco v. Wolfe,* 387 F. App'x 147, 158 (3d Cir.2010) ("disagreement of professional opinion among doctors does not equal deliberate indifference"); *Sawyer .v Sigler,* 320 F.Supp. 690, 698 (D.C. Neb. 1970)("While the opinion of a specialist might be highly desirable, this court must leave to the prison physicians the exercise of good judgment regarding medical treatment.").  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's

constitutional rights." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 278 (3d Cir.1990). See *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989) (concluding prison officials were not deliberately indifferent where a specialist recommended surgery, but subsequent treating physicians concluded surgery was unnecessary); *Wilhelm v. Rotman*, 680 F.3d 1113, 2012 WL 1889786, at *7 (9th Cir. May 25, 2012) ("Dr. Schuster's alleged failure was negligent misdiagnosis, or a disagreement with Dr. Rotman.  Therefore, the allegations are insufficient to establish deliberate indifference by Dr. Schuster.").  The mere fact that defendant LEEAH or any of plaintiff's other prison doctors disagreed with some or all of the recommendations of plaintiff's specialist does not show deliberate indifference.

Plaintiff also complains no one has ever proved he actually misused the tattoo gun and maintains it did not run off of a battery but from the wall outlet[12].  Plaintiff contends that presents an issue of material fact requiring a determination by a fact finder.

Any fact issue about whether the tattoo gun was battery operated is not the type fact issue which prevents summary judgment.  Plaintiff does not dispute that the report to Dr. LEEAH was that the tattoo gun was battery operated.  Dr. LEEAH's decision to confiscate the T.E.N.S. unit based upon plaintiff's misuse of the batteries was a decision Dr. LEEAH was authorized to make and is the type decision-making which is protected by qualified immunity. Defendant LEEAH's entitlement to qualified immunity is stronger in light of the fact that plaintiff was not denied alternative medical care, but instead, received alternative care which all of the medical evidence shows was an acceptable response to plaintiff's condition.

---

[12]By his October 24, 2012 Objection and Response to Defendants Brief in Support of Motion for Summary Judgment, plaintiff argues the November 16, 2010, confiscation of his T.E.N.S. unit was due to a false statement by a security officer, made to punish plaintiff for having the tattoo gun.  The Court notes plaintiff offers no evidence to prove this allegation the officer knowingly made a false statement.  Further, at the October 20, 2011 *Spears* hearing in this cause, plaintiff admitted this claim was pure speculation on his part and all claims against the officer were subsequently dismissed.  Subsequently, plaintiff has presented nothing which would resurrect that claim.

Even accepting, for purposes of argument, the truth of plaintiff's contentions about the tattoo gun, these arguments do not show that defendant LEEAH or other medical personnel refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo,* 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982).  It is clear the defendants exercised medical judgment when determining plaintiff's pain could be treated with an alternative treatment of pain medication, etc., rather than with the T.E.N.S. unit.

Thus, defendants have shown there is no disputed issue of material fact preventing an award of summary judgment to them on the merits.

**QUALIFIED IMMUNITY**

Defendants have also shown they are entitled to summary judgment on the issue of qualified immunity.  Whether plaintiff was actually using the battery from his T.E.N.S. unit to power a tattoo gun or not, is not determinative.  Even if the defendants erroneously believed plaintiff misused the T.E.N.S. unit, they were reasonable in doing so and in confiscating the unit to prevent further abuse.  Plaintiff does not dispute that, leading up to the decision to permanently confiscate the T.E.N.S. unit, plaintiff had a documented history showing possible abuse of the unit, resulting in at least two temporary confiscations and warnings that the unit might be confiscated permanently if plaintiff did not abide by strict parameters governing its use and maintenance.  Further, plaintiff does not dispute that the decision to permanently confiscate the T.E.N.S. unit was triggered by the report from a prison official in security that plaintiff had abused the unit by using the battery to power a tattoo gun newly discovered in his

cell.  Under those circumstances, and in light of the fact that the T.E.N.S. unit had no

therapeutic value but was solely for symptomatic treatment and that other symptomatic

treatment was subsequently provided in the form of pain medication and an epidural cervical

steroid block, reasonable persons in the defendants' position would not have been chargeable

with knowledge that his or her actions violated the plaintiff's clearly established constitutional

rights.  The acts of defendants were not objectively unreasonable as a matter of law.  *Hare v.*

*City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

Defendants have shown they are entitled to summary judgment on their defense of

qualified immunity.  Plaintiff has not shown defendant's acts or omissions, when considered

under the standard not to be deliberately indifferent, were objectively unreasonable as a matter

of law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

**ELEVENTH AMENDMENT**

In light of the analysis set forth above finding that defendants are entitled to summary

judgment on the basis of qualified immunity and on the merits, plaintiff's claim for injunctive

relief has no merit.

Plaintiff's claim for monetary damages against defendants in their official capacities is

also without merit for the same reason.  Additionally, the Court notes that any claim for

monetary relief against defendants in their official capacities is barred by the Eleventh

Amendment.  A suit against an official in his or her official capacity is actually a suit against

the state.  *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Sanders*

*v. English*, 950 F.2d 1152, 1158 (5th Cir. 1992).  The Eleventh Amendment bars suit against a

state or a state official unless the State has waived its immunity[13].  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989).  Consequently, plaintiff's claim against defendants in their official capacities is barred by the Eleventh Amendment and, thus, lacks an arguable basis in law and is frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

In light of plaintiff's express rejection of any state tort or medical malpractice suit[14] and his argument that his claims do not fall under the MLIIA, the Court will consider any such claims to have been dropped.

As to any claim of negligence or gross negligence asserted under section 1983, section 1983 imposes liability for deprivation of constitutionally protected rights, not for violations of tort duties of care.  *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1990); *see, also, Daniels v. Williams*, 474 U.S. 327, 331-34, 106 S.Ct. 662, 664-67, 88 L.Ed.2d 662 (1986).  Therefore, any attempt to base a tort claim on section 1983 lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Lastly, the Court notes plaintiff's argument that he has stated an Equal Protection claim under the Texas Constitution "because defendants have abused plaintiff's protected State Constitutional rights thereby."  The Court construes this to be an argument that the denial of his T.E.N.S. unit violated plaintiff's federal constitutional rights and thereby violated his state Equal Protection rights as well.

---

[13]An exception to this general principle was created in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which the Supreme Court held that a suit for prospective injunctive relief, challenging the constitutionality of a state official's action in enforcing state law, is not one against the State.  *Id.*, at 159-160, 28 S.Ct., at 453-54.  *See, also, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)(the Eleventh Amendment grants the States an immunity from retroactive monetary relief, but state officers are not immune from prospective injunctive relief).  However, as defendants point out, the relief requested in this cause is purely monetary and, thus, the *Young* exception does not apply.

[14]Plaintiff's October 24, 2012 Objection and Response to Defendants Brief in Support of Motion for Summary Judgment at page 18, section G.

Plaintiff has not shown any violation of his federal constitutional rights.  Further, he has not alleged sufficient facts to show how he suffered any violation of his state Equal Protection rights.  In analyzing an Equal Protection claim, the same requirements are applied under the Texas Constitution as under the United States Constitution. *Reid v. Rolling Fork Pub. Util. Dist.,* 979 F.2d 1084, 1089 (5th Cir.1992); *Rose v. Doctors Hosp.,* 801 S.W.2d 841, 846 (Tex.1990).  The doctrine of equal protection guarantees that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3253–54, 87 L.Ed.2d 313, 320 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)); *see Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 939 (Tex.1998); *In re M.A.C.,* 999 S.W.2d 442, 445 (Tex.App.—El Paso 1999, no pet.).  To assert an equal protection claim, the plaintiff must establish two elements: (1) that he was treated differently than other similarly-situated parties; and (2) he was treated differently without a reasonable basis.  *Executive 100, Inc. v. Martin County,* 922 F.2d 1536, 1541 (11th Cir.1991), *cert. denied,* 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *City of Lubbock v. Corbin,* 942 S.W.2d 14, 22 (Tex.App.—Amarillo 1996, writ denied).  Plaintiff has not stated how he was treated differently from other inmates.  He has not alleged other inmates who were believed to have repeatedly abused their T.E.N.S. units were allowed to keep them nor has he shown the deprivation of his T.E.N.S. unit under those circumstances was unreasonable.

Plaintiff has failed to allege or offer proof to sustain any claim of violation of his Due Process rights under the State Constitution.

## CONCLUSION

It is not disputed that plaintiff suffers back pain.  Indeed, the prison medical professionals acknowledge plaintiff's condition and continue to treat it.  The treatment

provided is not the treatment plaintiff desires, and while plaintiff is clearly dissatisfied with the

treatment decisions, he has not been and is not being subjected to deliberate indifference in

violation of the U.S. Constitution.

For the reasons set forth above, it is clear that, drawing all reasonable inferences in

favor of plaintiff, the nonmoving party, there is no material issue of disputed fact which

precludes entry of summary judgment for the defendants on the merits.  Further, plaintiff has

failed to defeat defendant's entitlement to qualified immunity.  Federal Rule of Civil Procedure

56(c).

It is the RECOMMENDATION of the Magistrate Judge to the United States District

Judge that defendants' September 27, 2012 Motion for Summary Judgment be GRANTED and

the instant cause be DISMISSED WITH PREJUDICE.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of August, 2013.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).